UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAID ABDUL,

                Petitioner,

    v.

ICE FIELD OFFICE DIRECTOR,

                Respondent.

Case No. C20-0690-RAJ-MAT

REPORT AND RECOMMENDATION

## I.      INTRODUCTION

Petitioner, who is currently in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 immigration habeas action *pro se* to obtain release from detention or a bond hearing. Currently before the Court is the Government's motion to dismiss. (Dkt. 5.) Petitioner did not file an opposition. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

## II.      BACKGROUND

Petitioner is a native and citizen of Tanzania who unlawfully entered the United States at

an unknown location on an unknown date. (Hammer Decl. (Dkt. 7) ¶ 4; Gugin Decl. (Dkt. 6), Ex. A.) Between 2002 and 2013, Petitioner amassed a string of criminal convictions, including for assault (2002, 2003, 2004, 2013), driving under the influence (2002), trespass (2003), unlawful transit conduct (2007, 2010), destruction of property (2009), theft (2009), and one weapons charge (2009).

On December 1, 2016, ICE took Petitioner into custody and served him with a Notice to Appear that charged him with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) because he was not admitted or paroled into the United States at a designated location. (Hammer Decl. ¶ 15; Gugin Decl., Ex. B.) Petitioner was placed in removal proceedings and applied for relief from removal, including asylum. (Hammer Decl. ¶ 15; Gugin Decl., Exs. B-D.)

On April 23, 2018, an immigration judge ("IJ") denied Petitioner's applications for relief and ordered him removed to Tanzania, with an alternate removal order to Comoros. (Hammer Decl. ¶ 16; Gugin Decl., Ex. D.) Petitioner appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on September 28, 2018. (Hammer Decl. ¶¶ 17-18; Gugin Decl., Exs. E-F.) On October 19, 2018, the U.S. Department of Homeland Security ("DHS") moved the BIA to reconsider the denial of Petitioner's appeal, citing his *Franco-Gonzalez* class membership. *See Franco-Gonzalez v. Holder*, No. 10-2211, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014); *Franco-Gonzalez v. Holder*, No. 10-2211, 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013). (Hammer Decl. ¶ 19; Gugin Decl., Ex. F.) The BIA granted the motion to reconsider, vacated its prior order, and appointed a Qualified Representative to represent Petitioner in his appeal. (Hammer Decl. ¶ 20; Gugin Decl., Exs. F-G.) On August 2, 2019, after considering briefing submitted by Petitioner's Qualified Representative, the BIA dismissed Petitioner's appeal and affirmed the IJ's decision in all respects except for the alternate designation of Comoros. (Hammer Decl. ¶ 21; Gugin Decl.,

Ex. F.) Petitioner did not file a petition for review with the Ninth Circuit, and his removal order became administratively final on September 1, 2019. (Hammer Decl. ¶ 21.)

On October 16, 2019, ICE provided Petitioner with a travel document ("TD") application to complete as part of the removal process. (*Id.* ¶ 22; Gugin Decl., Ex. H at 5.) On October 30, 2019, Petitioner returned the TD application to ICE, but it was incomplete. (Hammer Decl. ¶ 23.) ICE completed Petitioner's TD application to the extent possible using available information from Petitioner's A-file. (*Id.*) On December 9, 2019, ICE submitted the TD application to the Tanzanian Embassy. (*Id.*; Gugin Decl., Ex. H at 5.)

On January 18, 2020, Petitioner was transferred from the NWIPC to the Mental Health Unit at Paradise Valley Hospital in National City, California. (Hammer Decl. ¶ 26.) On January 27, 2020, ICE completed its Post Order Custody Review and determined to continue Petitioner's detention because he presents a public safety threat. (Hammer Decl. ¶ 28; Gugin Decl., Ex. H.) On February 10, 2020, Petitioner returned to the NWIPC from the California medical facility. (Hammer Decl. ¶ 30.)

On February 11, 2020, ICE received an email from the Tanzanian Consulate, stating that verification of Petitioner's citizenship had been sought with the relevant authority in Tanzania and that the Consulate was awaiting the results. (Hammer Decl. ¶ 20; Gugin Decl., Ex. J.) The verification investigation was being conducted because the documents submitted with Petitioner's TD application did not contain proof of Petitioner's nationality, such as a copy of his passport or his birth certificate. (Hammer Decl. ¶ 20.)

On March 23, 2020, ICE emailed the Tanzanian Consulate to request a status update. (Hammer Decl. ¶ 31.) The following day, the Consulate responded that it was unable to provide an update because its office was closed until further notice due to the COVID-19 outbreak. (*Id.*)

REPORT AND RECOMMENDATION - 3

On April 30, 2020, ICE conducted a custody reassessment of Petitioner's case in light of the COVID-19 pandemic and determined to continue detention because Petitioner remained a danger to the community. (*Id.* ¶ 32.) On May 4, 2020, Petitioner filed the instant habeas action. (Dkt. 1.) On May 6, 2020, an ICE panel interviewed Petitioner as a part of his 180-day post order custody review. (*Id.* ¶ 35.) The panel recommended continued detention because Petitioner poses a threat to public safety. (*Id.*)

On June 2, 2020, ICE received notice that the Tanzanian Embassy is continuing to process Petitioner's TD application despite being closed to the public due to the pandemic. (*Id.* ¶ 36.)

### III.    DISCUSSION

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, such as Petitioner, who have been ordered removed. Under § 1231(a), DHS[1] is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). In this case, the removal period began on the date Petitioner's removal order became administratively final. *See* 8 U.S.C. § 1231(a)(2)(B)(i). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are inadmissible under § 1182. 8 U.S.C. § 1231(a)(6). Because Petitioner is inadmissible under § 1182, his detention comports with the statute.

Although § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely. In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

States and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nevertheless, courts must remember that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The six-month presumptively reasonable period expired in March 2020, approximately six months ago. However, although Petitioner has been in postremoval detention for nearly a year, he has not provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. The Ninth Circuit has explained that detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country. *Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008). In this case, there is no evidence that Petitioner's removal is barred by U.S. law, and the Tanzanian government is still processing his TD application and thus has not refused to accept him. Accordingly, because Petitioner's removal is not indefinite, he is not entitled to release.

REPORT AND RECOMMENDATION - 5

Petitioner also requests a bond hearing. The Government does not address this issue in its motion to dismiss. The Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is not imminent. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011); *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 765-66 (9th Cir. 2020) (reaffirming *Diouf II*'s holding). Because ICE has not yet received a TD for Petitioner and scheduled his removal, the Court concludes that his removal is not imminent. As such, he is entitled to a bond hearing pursuant to *Diouf II*.

IV.    <u>CONCLUSION</u>

The Court recommends that both the Government's motion to dismiss (Dkt. 5) and Petitioner's habeas petition (Dkt. 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends denying Petitioner's request for release but ordering the Government to provide him with a *Diouf II* bond hearing within 30 days of the order on this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**September 25, 2020**</u>.

Dated this <u>31st</u> day of August, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 6